UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-CR-0205 (JRT/LIB) |
| v. | **REPORT & RECOMMENDATION** |
| JUSTIN JAMES RODRIGUEZ<br>Also known as Justin James Lee Rodriguez,<br>also known as Justin James Hunter, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the parties' Pretrial Motions. A Hearing was held on September 19, 2011, at which time the Defendant appeared personally, and by his attorney, Caroline Durham, and the Government appeared by Kimberly M. Hare, Assistant United States Attorney.

**I.    BACKGROUND**

On January 29, 2011, the Clay County District Court in Minnesota issued a warrant allowing law enforcement to search the residence of one Daniel Rodriguez[1] and his vehicle, a Green Chrysler Sebring. Law enforcement sought a missing cell phone, jacket, and keys. The officers searched the vehicle where they found the missing items.

However, while apparently still on the scene of the search and after conferring with the owner of the cell phone, jacket, and keys, law enforcement learned that the victim was also missing a pack of chewing tobacco. The missing tobacco was not mentioned during the victim's initial discussion with police and was not listed in the search warrant as an item sought by law

---

[1] Daniel Rodriguez is not a party to this case.

1

enforcement. Nevertheless, law enforcement again searched the vehicle. While again searching the vehicle, law enforcement moved some clothing and a duffle bag. The duffle bag was located on top of a firearm which was found on the floorboard behind the driver's seat.

Officers interviewed Daniel Rodriguez about the firearm, and he told them that the weapon belonged to the Defendant. Daniel Rodriguez stated that the Defendant had taken pictures of the gun on his cell phone. After learning that the Defendant was in custody at the Cass County Jail in Fargo, North Dakota, the officers went to the jail to question the Defendant. While at the jail, law enforcement located the Defendant's property which was being held by the jail and noted the model name, brand, and FCC ID from the Defendant's cell phone without a warrant. Thereafter, law enforcement used the information to obtain a search warrant for the contents of the phone.

Presently before the Court is the Defendant's motion to suppress evidence obtained as the result law enforcement's search of Daniel Rodriguez's car, motion to suppress the evidence obtained as a result of law enforcement's search of the Defendant's cell phone, and motion to suppress statements made by the Defendant at the Cass County Jail. The Court will consider each motion in turn.

## II.   VEHICLE SEARCH

The Defendant seeks to suppress the evidence obtained as a result of the search of Daniel Rodriguez's vehicle on two grounds. First, the Defendant argues that the initial search warrant for Daniel Rodriguez's vehicle was issued without a sufficient showing of probable cause. Second, the Defendant contends that the search and seizure itself was improper because law enforcement officers searched the vehicle a second time for tobacco, which was not listed as an item sought in the initial warrant. As to the second argument, the Government responds that the

Defendant lacks standing to challenge the search.  The Court will consider both parties' arguments below.

### A. Probable Cause for the Search Warrant

Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place in light of all the circumstances set forth in the supporting affidavit.  United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995).  The court reviews affidavits in support of search warrants using the "totality of the circumstances" approach, and they must "be read and interpreted in 'a common sense and realistic fashion." United States v. Cadwell, 864 F.2d 71, 74 (8th Cir. 1988) (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)). The Court should review the affidavits as a whole and not on a paragraph-by-paragraph basis.  United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991). Great deference should be afforded to the decision of the judicial officer who issued the warrant. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995).

In the affidavit supporting the search warrant (Ex. 4), Moorhead Police Department Detective Chris Martin stated that he received a phone call from the regional dispatch center who directed him to call Officer Shawn Carlson.  Officer Carlson informed Martin that a black Apple I Phone 4, jacket, and car keys had been stolen from a bar.  Using the GPS tracking system on his phone, the victim had himself tracked his phone to Daniel Rodriguez's home.  Moreover, Detective Martin recounted that Daniel Rodriguez's vehicle was located ½ block from his home and had a registered address matching Daniel Rodriguez's address, Officer Carlson further told Detective Martin that the victim had reported he could view his keys and jacket in plain view in the locked vehicle.  Additionally, Detective Martin logged onto the victim's I Phone account and confirmed that its GPS location matched Daniel Rodriguez's address.   Detective Martin stated his

belief that a search of Daniel Rodriguez's home and car would produce the victim's jacket, cell phone, and keys.

Based on this affidavit, the Court finds that probable cause did in fact exist for a warrant to be issued to search Daniel Rodriguez's car. The Defendant has not pointed to any specific reason why the search warrant is deficient. The affidavit provided enough facts to demonstrate a fair probability that the contraband sought by law enforcement would be found in the vehicle. Additionally, the search warrant described with particularity the vehicle that was to be searched and where that vehicle was located, and listed the items to be seized, as required by the Fourth Amendment. See United States v. Gamboa, 439 F.3d 796, 806 (8th Cir. 2006).

### B.     Defendant's Standing to Challenge the Search of Daniel Rodriguez's Vehicle

Additionally, the Defendant seeks to suppress the evidence seized as a result of the search of Daniel Rodriguez's vehicle on the basis that the search as a whole exceeded the scope of the search warrant. However, the Government responds that the Defendant lacks standing to challenge the search of the vehicle.

To challenge the lawfulness of a search under the Fourth Amendment, the Defendant must demonstrate that he had a legitimate expectation of privacy in the area searched or the item seized. Rakas v. Illinois, 439 U.S. 128, 134 (1978). In United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994), the Eighth Circuit enumerated factors for courts to consider in deciding whether a defendant had an expectation of privacy triggering standing to challenge the constitutional search including:

> [O]wnership; possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

The Court finds that the Defendant has failed to demonstrate that he has a sufficient connection with the vehicle giving him the legal right to challenge the search as illegally performed.  Here, it is undisputed that the Defendant did not own the vehicle searched, was not near the vehicle while it was searched, and did not have keys to the vehicle.  Therefore, the Defendant did not have a reasonable expectation of privacy in Daniel Rodriguez's vehicle allowing him to challenge the constitutionality of the search.  See Gomez, 16 F.3d 254 at 256 (finding that a defendant did not have a legitimate expectation of privacy in a vehicle when he expressly told law enforcement officers that he was not the vehicle's owner); United States v. Bledsoe, 2008 WL 4104530, at *3 (E.D. Pa. Aug. 29, 2008) (determining that a defendant "has no legitimate expectation of privacy in a vehicle owned by another person, which he was not even occupying at the time of the search").

However, the Defendant raises an additional argument in support of its motion and contends that because the Defendant's bag and clothing were moved during the search of the vehicle, the Defendant has demonstrated a sufficient expectation of privacy in the vehicle giving rise to standing.[2]  The Court disagrees.

In this respect, the present case parallels United States v. Fischer.  In Fischer, the defendant sought to suppress an undeveloped disposable camera seized from his father's vehicle which contained photos (once developed) showing the defendant holding a firearm seized during the search.  However, the Court found that the Defendant lacked standing to challenge the search because:

> the disposable camera was seized from a vehicle that did not belong to defendant, defendant was not present when it was seized and there is no evidence that he made any efforts to identify the camera as belonging to him or informing law enforcement officials that he was claiming ownership.

---

[2] The Defendant does not allege that the contents of the duffle bag were in any way searched.

United States v. Fischer, 2007 WL 853475 at *2 (D. Minn. Mar. 20, 2007).

Likewise, in this case, the vehicle from which the evidence was seized did not belong to the Defendant nor was the Defendant present when the vehicle was searched.  The only fact tying the Defendant to the vehicle is that law enforcement officers moved the Defendant's bag and clothing in the back seat in an attempt to find other reportedly stolen property (ie., missing tobacco) and instead they found a firearm.   Like in Fischer, the fact that some of the Defendant's possessions were in the vehicle does not give the Defendant a sufficient privacy interest in the vehicle in order to challenge the search.  Even if the Court found that the Defendant had a subjective expectation of privacy in the vehicle because it contained his property, the Court would still find that his expectation was not reasonable, as "a person has no reasonable expectation of privacy in an automobile belonging to another."  Fischer, 2007 WL 853475, at *2 (D. Minn. Mar. 20, 2007) (quoting United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001)).

Moreover, law enforcement's action in moving the bag does not equal an actual search or seizure. A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property."  United States v. Jacobsen, 466 U.S. 109, 113 (1984).  "[N]ot all police interference with an individual's property constitutes a Fourth Amendment seizure, i.e., the police do not seize property every time they handle private property. By requiring some meaningful interference with an individual's possessory interests in property, the Supreme Court inevitably contemplated excluding inconsequential interference with an individual's possessory interests."  United States v. Va Lerie, 424 F.3d 694, 706 (8th Cir. 2005); United States v. Gwinn, 191 F.3d 874, 878-79 (8th Cir. 1999) (finding that privacy interest existed in the defendant's luggage when it was "subject to a calculated and thorough squeezing and manipulation" of its exterior by law enforcement because such actions went

beyond mere incidental touching). Here, law enforcement simply moved the Defendant's property to perform an interior search of the vehicle. While the Defendant may have had an expectation of privacy as to what was inside his duffle bag, an argument that is irrelevant here since the contents of the duffle bag itself were not searched, he did not have a reasonable expectation of privacy in the area in the vehicle underneath the duffle bag. Thus, the Defendant lacks standing to challenge the search of Daniel Rodriguez's vehicle.[3]

For these reasons, the Court recommends denying the Defendant's motion to suppress the evidence obtained from law enforcement's search of Daniel Rodriguez's vehicle.

## III.  CELL PHONE SEARCH

The Defendant also argues that law enforcement's noting identifying information after briefly removing the battery on his cell phone (which had been secured at the Cass County Jail incident to the Defendant's arrest for another crime) violated the Fourth Amendment.

In this case, after learning from Daniel Rodriguez that the Defendant was the owner of the firearm found in the backseat of Daniel Rodriguez's vehicle, law enforcement travelled to the Cass County jail in order to interview the Defendant. At that time, the Defendant was in custody after being arrested for a different crime. In addition, while at the jail, law enforcement also briefly removed the battery of the Defendant's cell phone which had been confiscated when he was arrested. The battery was briefly removed to view the FCC ID for the phone to be used in an

---

[3] Additionally, the Court notes that even if it did find that the Defendant possessed standing to challenge the search of Daniel Rodriguez's vehicle, based on the briefing and oral argument provided to the Court, the Court likely would also find the second search of the vehicle to find the missing tobacco to be proper. The automobile exception to the Fourth Amendment allows police officers to conduct a warrantless search of a vehicle and containers within the vehicle whenever probable cause exists. California v. Acevedo, 500 U.S. 565, 580 (1991). In this case, the second search was based on statements from the victim that his tobacco was also missing. Up to this point in the investigation, law enforcement clearly could rely upon the statements of the victim that additional property was missing since his statements had been correct so far. Therefore, the victim's statement that he was missing additional property provided probable cause for law enforcement to again search the vehicle.

application for a warrant to search the contents of the phone. The Defendant contends that this act of removing the battery briefly constituted an improper search. The Court disagrees.

Searching an arrestee's person incident to lawful arrest does not violate the Fourth Amendment even if a substantial period of time passed. United States v. Lester, 647 F.2d 869, 874 (8th Cir. 1981) (citing United States v. Edwards, 415 U.S. 800, 807 (1974)). As the Court noted in Edwards,

> [O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

Edwards, 415 U.S. at 807 (1974)(upholding a search and seizure of articles of clothing that the defendant wore at the time of his arrest even though the search did not take place until over ten hours after the defendant was arrested). Moreover, this rule extends to situations where a separate law enforcement agency later searches or seizes the defendant's possessions for evidence of crime other than the one for which the defendant was arrested. Lester, 647 F.3d at 874-75 (determining search of clothing seized pursuant to arrest for detoxification lawfully tested by difference police agency when defendant became suspected of murder); United States v. Johnson, 450 F.3d 366, 371 (8th Cir. 2006).

Thus, the limited examination of the Defendant's cell phone to obtain the FCC ID in this case was not an improper search. The Defendant's cell phone was taken incident to his arrest. Law enforcement then removed the back of his cell phone to find the make, model, and FCC ID. This information was then used, in addition to other information, to obtain a separate warrant to

search the contents of the cell phone. Even though the search undertaken by law enforcement was completed some time after the Defendant's arrest and to obtain information for a different crime, the search was still proper. The Defendant's belongings were properly taken incident to arrest when he arrived at the Cass County jail and were then properly inspected for use to investigate a separate crime.

Thus, law enforcement's brief removal of the back of the Defendant's cell phone was not improper and does not justify the suppression of evidence obtained from the information retrieved or to nullify the finding of probable cause used to issue a warrant to search the contents of the cell phone.[4]

Consequently, the Court recommends denying the Defendant's motion to suppress on these grounds.[5]

## IV.    SUPPRESSION OF STATEMENTS

### 1.    Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken

---

[4] Moreover, its unclear whether the removal of the battery to find the FCC ID number even constituted a search. In United States v. Green, the court found that removal of the batter to acquire IMSI numbers on a cell phone did not constitute a "search" for which a warrant was required because the intrusion caused by the inspection was minimal. 2011 WL 86681, at *3 (D. Mass. 2011). As the court noted, "the agent did not turn the phones on, nor did he access the data stored in the phone, such as address books, text message histories, photographs, or emails." Id.

[5] In addition, the Court finds that because the removal of the cell phone battery at the jail was proper, probable cause also existed for the search warrant authorizing law enforcement to search the contents Defendant's cell phone. (Ex. 3). The affidavit in support of the search warrant demonstrates that probable cause existed to search the phone. The affidavit lists the specific phone and the evidence expected to be found on the phone which in this case was a picture of the Defendant with the firearm in question. Looking at the affidavit as a whole, the evidence demonstrated that there was a fair probability that contraband or evidence of a crime would be found on the phone. Gladney, 48 F.3d at 312.

into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

Before questioning begins of a suspect in custody, law enforcement must inform the Defendant: (1) that he has the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed for him. Miranda, 384 U.S. at 444. To be a valid Miranda warning, law enforcement officers must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." Id. at 467. After a Miranda warning is given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. Id. at 473–74.

However, a defendant can waive Miranda rights as long as the waiver is voluntary, knowing, and intelligent. United States v. Bell, 477 F.3d 607, 612 (8th Cir. 2007). The Government must demonstrate by a preponderance of the evidence that the suspect's waiver meets these standards. Miranda, 384 U.S. at 473. "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." Bell, 477 F.3d at 612 (citations and quotations omitted). To determine whether a waiver is voluntary, knowing, and intelligent depends on the totality of the circumstances. Moran v. Burbine, 475 U.S. 412, 421 (1986); Dickerson v. United States, 530 U.S. 428, 433-34 (2000).

"A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006), cert. denied, 549 U.S. 1273 (2007)(citations omitted). When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson, 530 U.S. at 434. Furthermore, a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted). Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). Courts consider a multitude of factors including the age of the defendant, the level of education of the defendant, the lack of advice to the accused on his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. Schneckcloth v. Bustamonte, 412 U.S. 218, 226 (1973); see also United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005)(stating that "officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices . . . None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation cause the defendant's will to be overborne.") (quotations and citation omitted).

    **2.**    **DISCUSSION**

Neither party disputes that the Defendant was in custody when he spoke to law enforcement at the Cass County Jail therefore triggering the requirements of Miranda. The Defendant asks the Court to suppress the statements made on January 29, 2011at the Cass County Jail on two grounds. First, the Defendant contends that the statements were not made freely and voluntarily. Second, the Defendant asserts that the statements were made involuntarily without the assistance of counsel. The Defendant has not made any specific arguments as to why the statements made were not done so knowingly and voluntarily.

As to the knowing waiver of rights prior to answering questions, the Court finds that the Advice of Rights form together with the recording of the interview (Ex. 1) shows that the warning given to Defendant constituted a valid Miranda warning. The form provided that the Defendant had the right to remain silent, that the statements could be used against him in a court of law, that he had the right to an attorney, and that an attorney would be appointed for him if he could not afford one. Miranda, 384 U.S. at 444. In addition, the form advised the Defendant of his right to stop the questioning at any time if he decided that he wanted a lawyer present.

Turning to whether the Defendant's waiver of his Miranda rights was knowing, intelligent, and voluntary, the Court finds that the totality of the circumstances supports the Government's contention that the Defendant's wavier was knowing, intelligent, and voluntary.

The Court concludes that the waiver was knowing and intelligent because after law enforcement read the Defendant his rights, the Defendant waived his rights with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v.Syslo, 303 F.3d 860, 865 (8th Cir. 2002). The Defendant signed the form which stated that, "I have read this statement and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Before the Defendant signed the form,

the interviewing agent expressly asked the Defendant if he understood his rights, and the Defendant signed the form. As such, the Defendant acknowledged that he understood his rights, including his right to an attorney, and still agreed to speak to law enforcement officers. See North Carolina v. Butler, 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver . ."); United States v. Karbedeh, 2010 WL 3521984 at *12 (D. Minn. Aug. 11, 2010) (finding waiver to be knowing and intelligent in part because the defendant signed a form indicating that he understood all his Miranda rights and then waived those rights).

Furthermore, the Court finds that the Defendant's "will was not overborne" by law enforcement conduct such that the waiver of his Miranda rights was not voluntary. Dickerson, 530 U.S. at 434. The evidence shows that no threats, promises, violence, or untruths were used to obtain the Defendant's waiver of rights or his subsequent statements. No evidence was presented to the Court showing that law enforcement exerted any pressure on the Defendant to speak with them. In addition, the entire interview only lasted 18 minutes which cannot be considered so lengthy that undue pressure was exerted on the Defendant.

Lastly, the Court finds that the Defendant did not ask law enforcement for an attorney at any time during the brief interview. The Miranda right to counsel only attaches when a suspect invokes the right during an interrogation by making a clear and unequivocal request for counsel. See Davis v. United States, 512 U.S. 452, 458-59 (1994). Here, no such request was made. The Defendant did not indicate his desire to have counsel assist him in answering questions during the interview.

For the above reasons, the Court recommends that the Defendant's motion to suppress the statements made at the Cass County Jail also be denied.

## V.     CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED**

1. That Defendant's Motion to Suppress Statements, Admissions and Answers Made by the Defendant [Docket No. 25] be **DENIED**; and

2. That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search & Seizure [Docket No. 26] be **DENIED.**


Dated: October 6, 2011                                              s/Leo I. Brisbois
                                                                                LEO I. BRISBOIS
                                                                                United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by October 21, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.